### SPINK *v.* FRANCIS and others.[1]

### WILLIAMS *v.* SAME.[1]

*(Circuit Court, E. D. Louisiana. June 2, 1884.)*

EQUITY JURISDICTION.

A court of equity can interfere, by an order, with a party conducting a criminal procedure only when the parties sought to be enjoined have, as plaintiffs, submitted themselves to the court by a bill of equity as to the matter or right affected by or involved in the criminal procedure; but the pursuer and pursued must be identical in the case, *i. e.,* the defendant in the bill and in the indictment must be the same person, and the person preferring the bill and the criminal charge must also be the same. As to parties and controversy the inquiry is analogous to that in regard to the plea of *lis pendens.*

On Demurrers, and on Motions to Quash Restraining Orders. See S. C. 19 FED. REP. 670.

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

*Joseph P. Hornor* and *Francis W. Baker,* for complainants.

*James R. Beckwith,* for defendants.

BILLINGS, J.   When these causes were before the court last, the court laid down the limit within which a court of equity could interfere by an order with a party conducting a criminal procedure, and be-beyond which there can be no interference, as follows: "It is when the parties sought to be enjoined have, as plaintiffs, submitted themselves to the court by a bill of equity as to the matter or right affected by or involved in the criminal procedure." 19 FED. REP. 671. Leave was given, *ibidem,* to amend the bill so as to show this fact.

The only question which need be considered now is whether the plaintiffs have brought themselves, by their amendment, within this limit.   The original criminal jurisdiction in chancery has long been obsolete.   The learning relating to the question is confined to a few cases, viz.:   *Mayor of York* v. *Pilkington,* 2 Atk. 302; *Montague* v. *Dudman,* 2 Ves. 396; *Atty. Gen.* v. *Cleaver,* 18 Ves. Jr. 211; and *Saull* v. *Browne,* L. R. 10 Ch. App. Cas. 64.

In the first of these cases, which was a case where plaintiffs claimed the sole right of fishing in the Ouse, and they had filed a bill, in which they submitted that matter to the chancellor, and afterwards proceeded by indictment for an interference with the same right. Lord HARDWICKE illustrated his view of the authority of the chancellor by the case of a bill to quiet possession, by a party plaintiff, who should afterwards prefer an indictment for a forcible entry- and says this court would stop the indictment.

In *Atty. Gen.* v. *Cleaver,* 18 Ves. Jr. 220, Lord ELDON defines the authority of the preceding case as follows:

"Lord HARDWICKE held that he would deal with the subject with reference to what was civilly in question between the plaintiff and defendant, though, also, the subject of criminal prosecution; but I do not find that he thought himself justified in that with regard to other persons who had not themselves resorted to him."

In *Saull* v. *Browne* Lord CAIRNS says:

"I should be unwilling to express any doubt that there may be cases in which criminal proceedings instituted by a party to a suit, in this court, are so identical with the civil proceedings as to induce this court to order that the same person shall not at the same time *pursue his remedy* in this court, and pursue another remedy which ranges itself under the head of criminal jurisdiction."

The authority of the chancery court is therefore limited to a plaintiff in the equity proceedings, and comes from the general authority of courts of chancery to control the conduct of parties who seek its aid in furtherance of their civil rights.   Story, Eq. Jur. § 893.   The case which is recognized as establishing the rule (Lord HARDWICKE's) makes it apply only to a case where a plaintiff in equity attempts to resort to a criminal procedure to enforce against the defendant the same rights which he is pursuing against the same defendant in the equity cause.   It is the double harassing, *first,* by the equity suit,

and, *second,* by the criminal procedure, that the equity court interrupts. This is the ground upon which the queen's counsel, who argued in support of the injunction, placed the application in *Saull* v. *Browne, supra.* But the pursuer and pursued must be identical in the cases,—*i. e.,* the defendant in the bill and in the indictment must be the same person,—and the person preferring the bill and the criminal charge must also be the same. As to parties and controversy the inquiry is analogous to that in regard to the plea of *lis pendens.*

The amendment is, in effect, that the defendants have submitted as plaintiffs the matter or right involved in the criminal proceedings to this court in four enumerated cases. An examination of these records shows that the defendants here have appeared in some of the causes as original plaintiffs, and in one cause as intervenors, where they should be classed as plaintiffs, for the purpose of determining this matter, and have submitted to the court the matter or right here involved as between themselves and other parties, and that they have never submitted to this court such matter or right as between themselves and the plaintiffs in these bills who were not parties to those other causes, nor does it appear that they were privies to the parties there. It was not, therefore, their right which was submitted in these equity causes, but a similar right. I think, therefore, by the authority of the original case, and of those cases which have followed it, that the plaintiffs have not, by the amendment, placed themselves in the category of those who can ask an order to operate upon the defendants, and that, therefore, the restraining order must be vacated, and the demurrer to the amended bill sustained.